**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MELISSINOS TRADING, LLC, <br><br>                         Plaintiff, <br><br> v. <br><br> JPMORGAN   CHASE   &   CO.;   JOHN EDMONDS; and JOHN DOE Nos. 1-10, <br><br>                     Defendants. | No. _____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Melissinos Trading, LLC makes these allegations against Defendants JPMorgan Chase & Co., John Edmonds, and John Doe Nos. 1-10 (collectively, "Defendants") based on personal knowledge as to their own actions and on information and belief as to other matters.

## NATURE OF THE ACTION

1.    This class action alleges that, from no later than January 1, 2009 through December 31, 2015 (the "Class Period"), Defendants engaged in the unlawful and intentional manipulation of gold, silver, platinum, and palladium futures contracts ("precious metals futures contracts") traded on the New York Mercantile Exchange ("NYMEX") and the Commodity Exchange, Inc. ("COMEX") and options on precious metals futures contracts traded on NYMEX and COMEX.

2.    This action is brought to recover for injuries to Plaintiff and members of the Class caused by Defendants' violations of the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq*.

3.    On October 9, 2018, Defendant Edmonds, an employee of Defendant JPMorgan Chase & Co. ("JPM"), pleaded guilty to a two-count information. The counts charged in the information were, respectively, "conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343, commodities fraud, in violation of 18 U.S.C. § 1348(1), commodities price manipulation, in

violation of 7 U.S.C. § 13(a)(2), and spoofing, in violation of 7 U.S.C. §§ 6c(a)(5)(C), all in violation of 18 U.S.C. § 371" and "commodities fraud, in violation of 18 U.S.C. § 1348(1)."[1] On November 5, 2018, Judge Robert N. Chatigny of the United States District Court for the District of Connecticut unsealed Mr. Edmonds' case, publicly revealing the information and plea agreement.

4.     At the core of Defendant Edmonds' guilty plea is Defendants' price manipulations with respect to NYMEX and COMEX precious metals futures contracts and options on those contracts. These manipulations were effectuated during the Class Period through the use of a technique known as "spoofing". Spoofing, as defined by the Commodity Exchange Act, is the act of "bidding or offering with the intent to cancel the bid or offer before execution."[2]

5.     Defendants' use of spoof orders would indicate to market participants the appearance of legitimate supply and demand on the market and induce other market participants to change their trading patterns based on those false appearances. This would result in class members trading against Defendants' genuine orders, typically because those genuine orders had prices that appeared more favorable because of Defendants' spoofing. Accordingly, Defendants caused Plaintiff and other members of the class to trade at prices, quantities, and times at which they would not have traded through the use of manipulative and disruptive trade practices.

6.     Defendants' use of spoofing was intended to, and did, artificially move the prices of NYMEX and COMEX precious metals futures contracts and options on such contracts during the Class Period in directions that were favorable to Defendants but unfavorable to Plaintiff and the Class members.

---

[1] *U.S. v. Edmonds*, No. 18-cr-239, ECF No. 7 at 1 (D. Conn. Oct. 9, 2018).

[2] 7 U.S.C. §§ 6c(a)(5)(C).

## JURISDICTION, VENUE, AND COMMERCE

7.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 and Section 22 of the Commodity Exchange Act, 7 U.S.C. § 25.

8.     Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. Defendants' conduct was within the flow of, was intended to, and did, in fact, have a substantial effect on the interstate commerce of the United States, including in this District.  During the Class Period, Defendants used the instrumentalities of interstate commerce, including interstate wires and the U.S. mail, to effectuate their illegal scheme.

9.     Venue is proper in this District pursuant to Section 22(c) of the Commodity Exchange Act, 7 U.S.C. § 25(c), and 28 U.S.C. §1391(b), (c), and (d).   One or more of the Defendants resides, transacts business, is found, or has agents in this District, and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

## PARTIES

### PLAINTIFF

10.     Plaintiff Melissinos Trading, LLC ("Plaintiff" or "Melissinos") is a limited liability company with headquarters in New Jersey. During the Class period, Plaintiff transacted in COMEX gold and silver futures contracts as well as NYMEX palladium futures contracts.

11.     Plaintiff Melissinos suffered economic injury, including monetary losses, as a direct result of Defendants' manipulation of COMEX and NYMEX precious metals futures contracts and options thereon during the Class Period.

### DEFENDANTS

12.     Defendant JPMorgan Chase & Co. is a Delaware corporation headquartered in this District at 270 Park Ave., New York, New York 10017. JPM, through its trading employees in the

United States, transacted in precious metals futures contracts and options on those contracts on both NYMEX and COMEX throughout the Class Period.

13.     Defendant Edmonds was employed as a precious metals trader by JPM throughout the Class Period. Defendant Edmonds is a resident of Brooklyn, New York and recently entered a two-count guilty plea in the United States District Court for the District of Connecticut with respect to precious metals futures contracts and options on those contracts.

14.     Defendants John Does 1-10, inclusive, are other persons whose identities are currently unknown to Plaintiff. John Does 1-10 include, but are not necessarily limited to, precious metals traders in the employ of JPM that conspired with Edmonds to manipulate the prices of precious metals futures contracts. The John Doe Defendants agreed to and did otherwise participate in, facilitate, or assist with the manipulation and unlawful conduct alleged herein. Certain of these Defendants appear to have been identified to the United States Attorney, while others remain unknown.

15.     "Defendant" or "Defendants" as used herein, includes, in addition to those named specifically above, all of the named Defendants' predecessors, including those merged with or acquired by the named Defendants and each named Defendant's wholly-owned or controlled subsidiaries or affiliates that played a material role in the unlawful acts alleged in this Complaint.

16.     Whenever reference is made to any act of any corporation, the allegation means that the corporation engaged in the act by or through its directors, officers, employees, or agents while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

## CLASS ACTION ALLEGATIONS

17.     Pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, OTC Plaintiff bring this action on behalf of themselves and on behalf of the following Class:

4

All persons and entities that, between the dates of January 1, 2009 and December 31, 2015 (inclusive), purchased or sold any NYMEX platinum futures contract, NYMEX palladium futures contract, COMEX silver futures contract, COMEX gold futures contract, or any option on the aforementioned futures contracts.

18.     Excluded from the Class are the following: Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, any person acting on their behalf or any co-conspirator.  Also excluded from these Classes are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

19.     Ascertainability: The Classes are readily ascertainable and are those for which records should exist.

20.     Numerosity: Due to the nature of the trade and commerce involved, Plaintiff believes that there are hundreds of geographically dispersed members of each Class, the exact number and their identities being known to Defendants.

21.     Typicality: Plaintiff's claims are typical of the claims of the members of the Classes.  Plaintiff and members of the Classes sustained damages arising out of Defendants' common course of conduct in violation of the Commodity Exchange Act as alleged herein.  The damages and injuries of each member of the Classes were directly caused by Defendants' wrongful conduct in violation of federal law.

22.     Commonality: There are questions of law and fact common to one or both of the Classes, including, but not limited to:

    a.      whether Defendants manipulated the price of one or more NYMEX platinum futures contracts, one or more NYMEX palladium futures contracts, one or more COMEX silver futures contracts, one or more COMEX gold futures contracts, or the price of options on one or more of those futures contracts, in violation of the CEA;

5

    b.      whether Defendants' manipulation caused the price of one or more NYMEX platinum futures contracts, one or more NYMEX palladium futures contracts, one or more COMEX silver futures contracts, one or more COMEX gold futures contracts, or the price of options on one or more of those futures contracts, to be artificial;

    c.      whether Defendants' unlawful conduct caused cognizable legal injury under the CEA;

    d.      the identity of the participants of the manipulative scheme;

    e.      the duration of manipulative scheme alleged herein and the acts performed by Defendants;

    f.      whether Defendants' conduct violated Section 22 of the Commodity Exchange Act, 7 U.S.C. § 25;

    g.      the appropriate nature and measures of Class-wide relief.

23.    <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Classes and Plaintiff has retained counsel competent and experienced in the prosecution of class actions and complex litigation to represent themselves and the Classes.

24.    <u>Predominance</u>:  Questions of law or fact that are common to the members of the Classes predominate over any questions affecting only individual members of the Classes.

25.    <u>Superiority</u>:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The prosecution of separate actions by individual members of the Classes would impose a heavy burden on the courts and would require substantial duplication of effort and exponentially greater expenses for both members of the Class and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Classes.  A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable

results.  Absent a class action, it would not be feasible for the vast majority of the members of the Classes to seek redress for the violations of law herein alleged.

## FACTUAL ALLEGATIONS

**I.    PRECIOUS METALS FUTURES CONTRACTS, OPTIONS ON FUTURES, AND FUTURES TRADING**

### A.    Background

26.     The Commodity Exchange Act is the statute governing the trading of contracts for the sale of a commodity for future delivery, commonly referred to as "futures contracts".

27.     A futures contract is an agreement to buy or sell a commodity at a date in the future. In practice, however, only a very small percentage of all futures contracts traded each year are satisfied by delivery of the underlying commodities.

28.     The term commodity is defined by statute to include numerous agricultural products, as well as "all other goods and articles", except those that are specifically excluded from the statute.[3] Accordingly, futures contracts are commonly traded with respect to agricultural commodities, physical commodities like precious metals, or financial commodities. In this case, platinum, palladium, silver, and gold all constitute "commodities" under the CEA.

29.     The CEA also requires that futures contracts must be traded over a designated contract market (typically referred to as an exchange). With respect to the precious metals futures contracts at issue, NYMEX and COMEX are the relevant exchanges. The CME Group is the holding company and parent corporation for both COMEX and NYMEX. The CME Group also owns and operates an electronic trading platform "CME Globex", whereby market participants can actively trade COMEX and NYMEX futures contracts.

---

[3] *See* 7 U.S.C. § 1a(9).

30.    Trading on CME Globex remains subject to COMEX and NYMEX rules. COMEX and NYMEX both permit the restriction, suspension or termination of a party found to have violated a rule from "access to the Globex platform, the Trading Floor, or any other trading or clearing platform or facility owned or controlled by CME Group . . .".[4]

31.    NYMEX and COMEX specify standardized terms for the futures contracts[5] they list for trading, as well as the terms for options on those futures contracts.

32.    Futures contracts are generally offset before those contracts mature, such that a purchaser of a gold futures contract may offset that contract by selling a gold futures contract. Thus, futures contracts have two sides, which a "long" side being the buyer of a particular contract, and the "short" side being the buyer of a particular contract. In the unlikely event that the long does not offset or liquidate its purchase, the long is obligated to take delivery and pay for the underlying commodity as specified in the terms of the contract. If the short does not enter into an offsetting trade, the short is obligated to make delivery of the commodity during the specified delivery dates.

33.    Options contracts are agreements that permit the buyer, the "option holder" the right, but not the obligation, to buy or sell an underlying good or commodity at a specified price during the period specified within the agreement. The buyer of an option pays a premium to the seller for the right to buy (call) or sell (put) the underlying good or commodity.

34.    Options contracts are split into "call" and "put" options.

---

[4] *See, e.g.,* NYMEX Rule 402.B(6) ("If the Panel finds that a party, including a Member, has violated a Rule, the Panel may take one or more of the following actions: . . . 6. Restrict, suspend or terminate the party's access to the Globex platform, the Trading Floor or any other trading or clearing platform or facility owned or controlled by CME Group, or right to supervise the entry of any orders into such platforms by others.").

[5] *See, e.g.,* https://www.cmegroup.com/trading/why-futures/welcome-to-comex-gold-futures.html

35.     A call option permits, but does not obligate, the buyer to purchase the commodity at a specified price (referred to as the "exercise price" or "strike price"), and correspondingly obligates the seller, the "option writer", to make the sale on those terms if the option is exercised. A call option seller also subject themselves to a performance bond margin requirement, requiring it to post additional if the price moves against its position. The buyer, by purchasing a call option, ensures that if the price increases past the strike price, it has locked in the ability to purchase the commodity at a below-market price.

36.     For a put option, the buyer of the option gains the right to insist upon a sale of the underlying commodity. That is, the buyer secures the right, but not the obligation, to sell the commodity at the strike price, rendering the seller of the put option obligated to purchase the underlying commodity at the strike price if the option is exercised. A put option seller also has a performance bond margin requirement, requiring it to post additional margin if the price moves against its position. The buyer, by purchasing a put option, ensures that if the price of the underlying commodity *decreases* past the strike price, it has locked in the ability to sell the commodity at an above-market price.

37.     NYMEX and COMEX both sell options on futures contracts themselves, permitting market participants to place options trades with respect to futures contracts for commodities, rather than directly on the commodities themselves.

38.     Futures contracts are traded with respect to a variety of metals. These are classified as either "precious metals" or "industrial metals". The former category consists of gold, silver, platinum, and palladium. Of these, gold and silver futures contracts are traded at COMEX, while platinum and palladium futures contracts are traded at NYMEX.  Industrial metals include copper, tin, aluminum, and zinc.

39.     COMEX's gold futures contract is a futures contract with an underlying commodity of 100 troy ounces of gold, subject to other specifications as stated in Chapter 113 of the COMEX rulebook.[6] COMEX's gold futures contracts are listed on COMEX, are subject to its rules and regulations, and are traded electronically on CME Globex.

40.     COMEX's silver futures contract is a futures contract with an underlying commodity of 5,000 troy ounces of silver, subject to other specifications as stated in Chapter 112 of the COMEX rulebook.[7] COMEX's silver futures contracts are listed on COMEX, are subject to its rules and regulations, and are traded electronically on CME Globex.

41.     NYMEX's palladium futures contract is a futures contract with an underlying commodity of 100 troy ounces of palladium, subject to other specifications as stated in Chapter 106 of the NYMEX rulebook.[8] NYMEX's palladium futures contracts are listed on NYMEX, are subject to its rules and regulations, and are traded electronically on CME Globex.

42.     NYMEX's platinum futures contract is a futures contract with an underlying commodity of 50 troy ounces of platinum, subject to other specifications as stated in Chapter 105 of the NYMEX rulebook.[9] NYMEX's platinum futures contracts are listed on NYMEX, are subject to its rules and regulations, and are traded electronically on CME Globex.

II.     DEFENDANTS' MANIPULATION OF THE PRICES OF PRECIOUS METALS FUTURES

43.     From a period no later than January 1, 2009 to at least December 31, 2015, Defendants provided the futures market with false and illegitimate information about supply and

---

[6] *See* https://www.cmegroup.com/content/dam/cmegroup/rulebook/COMEX/1a/113.pdf

[7] *See* https://www.cmegroup.com/content/dam/cmegroup/rulebook/COMEX/1a/112.pdf

[8] *See* https://www.cmegroup.com/content/dam/cmegroup/rulebook/NYMEX/1a/106.pdf

[9] *See* https://www.cmegroup.com/content/dam/cmegroup/rulebook/NYMEX/1a/105.pdf

demand by bidding or offering with the intent to cancel the bid or offer before execution – a practice known as "spoofing".

44.    By placing false signals of supply and demand on the market, Defendants intended to induce, and did induce, other market participants to trade against Defendants' genuine orders (orders priced consistent with those at which Defendants desired to trade) on the opposite side of its spoof orders. As a result of Defendants' spoofing, Plaintiff and other market participants placed orders at prices, quantities, and times at which they otherwise would not have traded.

45.    The trading of Plaintiff and other market participants at these prices, quantities, and times was intended to, and did, financially benefit Defendants.

46.    Defendants provided false information by placing electronic orders to buy and sell NYMEX and COMEX precious metals contracts through CME Globex without the intention to allow those orders be executed.

47.    After providing these orders from JPM's offices in New York and the information about these orders was conveyed to the CME Globex marketplace, Defendants would cancel those orders. Accordingly, these orders' purpose was to convey the illusion of market activity at the price, quantity, and time of the spoof order with the foreseeable effect that Plaintiff and others similarly situated would react to this market information.

48.    In one such instance, at approximately 1:08:48.831 p.m. (Central Daylight Time) on or about October 12, 2018, Defendant Edmonds placed an order to sell 402 silver futures contracts at the per-contract price of $33.610 with the intent to cancel the order before execution.

49.    This order was placed with the intent of communicating materially false and illegitimate signals of supply and demand to the market, informing the market of a substantial

number of sell orders, so that Defendants could then buy futures contracts at an artificially low price.

50.     By creating the illusion that 402 sell orders were hitting the market at that price, others in the marketplace would have seen the illusion of market activity and falsely believed there was a demand to sell those orders at that price. This would understandably induce someone seeking to sell to execute at less favorable prices, anticipating that prices would decrease from the per contract price of that sell order, or to trade more quickly to sell before the price impact of that trade is incorporated into the market.

51.     As a result, Plaintiff and other market participants were caused to transact in COMEX and NYMEX precious metals futures contracts and options on those futures contracts at artificial prices. Plaintiff and other market participants suffered monetary losses thereby.

52.     The Department of Justice has already noted the presence of one injured market participant who sold a silver futures contract at 1:08:48.837 at the price of $33.585 who was induced to trade by Defendants' spoofing conduct.

53.     Innocent market participants like Plaintiff and other members of the proposed Class were induced to trade at artificial prices as a result of Defendants' manipulation, and were damaged thereby to the profit of Defendants.

## FRAUDULENT CONCEALMENT

54.     During the Class Period, Defendants actively, fraudulently, and effectively concealed their collusion, as alleged herein, from Plaintiff and members of the Class.

55.     By its very nature, the unlawful activity alleged herein was self-concealing. Defendants communicated their spoof orders to CME Globex electronically and surreptitiously canceled those trade orders for the purpose of manipulating the prices of COMEX and NYMEX precious metals futures contracts and options thereon to artificial levels.

12

56.     Plaintiff and other class members would not have known the intent underlying Defendants' spoof orders. Defendants did not disclose the manipulative intent behind these spoof orders nor would Plaintiff and other class members have insight into the reasons that the orders were ultimately not executed.

57.     Defendants fraudulently concealed their anticompetitive activities by, among other things, engaging in secret communications in furtherance of their conduct. Defendant Edmond learned of spoofing from more senior traders at JPM and personally deployed this strategy hundreds of times with the knowledge and consent of his immediate supervisors. These communications underlying Defendants' manipulative strategy were not reasonably available to Plaintiff or members of the Class.

58.     Plaintiff and other class members could not, accordingly, have known of Defendants' unlawful and concealed manipulative practices through the exercise of due diligence before Defendant Edmonds' guilty plea for engaging in the conduct described above was unsealed by the United States District Court for the District of Connecticut on November 5, 2018.

59.     As a result of Defendants' fraudulent concealment, Plaintiff asserts that the claims arising from Defendants' conduct have been tolled under the applicable statute of limitations.

60.     Defendants are equitably estopped from asserting that any otherwise applicable limitations period has lapsed.

## CLAIMS FOR RELIEF

**A.      Manipulation in Violation of the Commodity Exchange Act, 7 U.S.C. §§ 1, *et seq.***

61.     Plaintiff incorporates by reference and re-alleges the preceding allegations as though fully set forth herein.

62.   **Ability to Influence Prices**.  At all times throughout the Class Period, Defendants had the ability to cause and did cause artificial prices for COMEX gold futures contracts, COMEX silver futures contracts, NYMEX palladium futures contracts, NYMEX platinum futures contracts and options on each of those futures contracts. Defendants, directly and/or through their employees or affiliated entities, actively participated in the markets for each of these contracts. Defendants were aware of the effects of spoofing and manipulative conduct on those markets.

63.   **Causation and Artificial Price**.  When a factor that affects a futures contract price is artificial or illegitimate, then the resulting futures contract price is necessarily artificial.  Here, Defendants manipulated the prices of COMEX gold futures contracts, COMEX silver futures contracts, NYMEX palladium futures contracts, NYMEX platinum futures contracts and options on each of those futures contracts. By submitting artificial and illegitimate information about supply and demand to the market, Defendants caused the prices of those contracts to become artificial.

64.   **Intent**.  Manipulative intent is evidenced by, among other things: (a) Defendant Edmonds' admitted submission of false information to the market and (b) Defendant Edmonds' use of this strategy with the knowledge and consent of his immediate supervisors. Defendants' communications permitting this strategy to be disseminated and ultimately executed demonstrate that Defendants purposefully and systematically intended to and did manipulate the prices of COMEX gold futures contracts, COMEX silver futures contracts, NYMEX palladium futures contracts, NYMEX platinum futures contracts and options on each of those futures contracts. Additionally, Defendants' specific intent and motive in the manipulation of precious metals futures contracts and options thereon was to obtain ill-gotten trading profits from transactions in the market for precious metal futures contracts and options thereon.  As a direct consequence of

Defendants' knowingly unlawful conduct, the prices of precious metals futures contracts and options thereon were manipulated to artificial levels by the Defendants throughout the Class Period.

65.     Each Defendant, individually, in concert, and/or as one another's control persons or agents, through their acts alleged herein, specifically intended to and did cause unlawful and artificial prices of futures and options contracts in violation of the CEA, 7 U.S.C. § 1, *et seq*.

66.     By their intentional and unlawful misconduct, Defendants each violated Sections 6(c), 6(d), 9(a), and 22(a) of the Commodity Exchange Act, 7 U.S.C. §§ 9, 13b, 13(a), and 25(a), throughout the Class Period. As a direct result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered actual damages and injury in fact due to artificial prices for precious metals futures contracts and options on such contracts to which they would not have been subject but for the unlawful conduct of the Defendants as alleged herein.  Plaintiff and members of the Class who purchased or sold COMEX gold futures contracts, COMEX silver futures contracts, NYMEX palladium futures contracts, NYMEX platinum futures contracts or options on each of those futures contracts during the Class Period were injured and are each entitled to their actual damages for the violations of the CEA alleged herein.

**B.     Principal-Agent Liability in Violation of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq*.**

67.     Plaintiff incorporates by reference and re-alleges the preceding allegations as though fully set forth herein.

68.     Each Defendant is liable under Section 2(a)(1) of the CEA, 7 U.S.C. § 2(a)(1), for the manipulative acts of their agents, representatives and/or other persons acting for them in the scope of their employment.

69.    Plaintiff and members of the Class are each entitled to actual damages sustained in COMEX gold futures contracts, COMEX silver futures contracts, NYMEX palladium futures contracts, NYMEX platinum futures contracts and options on each of those futures contracts for the violations of the CEA alleged herein.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests relief as follows:

A.    That the Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class;

B.    That the Court enter an order declaring that Defendants' actions, as set forth in this Complaint, violate the law;

C.    That the Court award Plaintiff and the Class damages against Defendants for their violations of the Commodity Exchange Act;

D.    That the Court award Plaintiff pre- and post-judgment interest;

E.    That the Court award Plaintiff its costs of suit, including reasonable attorneys' fees and expenses; and

F.    That the Court award such other equitable and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED:  November 14, 2018                    HAUSFELD LLP


                                   */s/ Scott Martin*
                                   SCOTT MARTIN
                                   33 Whitehall Street, 14th Floor
                                   New York, NY 10004
                                   Telephone: 646-357-1100
                                   Facsimile:  202-540-7201
                                   smartin@hausfeld.com

                                   TIMOTHY S. KEARNS (*pro hac pending*)
                                   REENA A. GAMBHIR (*pro hac pending*)
                                   HAUSFELD LLP
                                   1700 K Street, NW, Suite 650
                                   Washington, DC 20006
                                   Telephone: 202-540-7200
                                   Facsimile:  202-540-7201
                                   tkearns@hausfeld.com
                                   rgambhir@hausfeld.com

                                   ADAM FRANKEL (*pro hac pending*)
                                   GREENWICH LEGAL ASSOCIATES, LLC
                                   881 Lake Avenue
                                   Greenwich, CT 06831
                                   Telephone & Fax: 203-622-6001
                                   AFRANKEL@GRWLEGAL.COM

                                   *Counsel for Plaintiff Melissinos Trading, LLC*